Next case that we have for hearing this morning is United States v. Twitty. It is docket 20-1083. And we will begin with Mr. Rice when he is ready. Thank you. May it please the court. My name is Scott Rice and it's my pleasure to be here on behalf of Mr. Twitty. We're asking the court to find that the assimilative crimes act did not confer jurisdiction upon this court and the application of Colorado revised statute section 183602 was precluded by similar federal statutes. Additionally, we'd ask the court to find that the analysis given by the court below that the Colorado statute is unconstitutional did not permit the court to alter the statute in any way, including in the indictment. And also we would ask the court to find that the jury instructions that were provided to the jury were incorrect under Colorado law, which should have been followed if the ACA did in fact apply and jurisdiction was conferred. And finally, as to raise the sufficiency of the evidence, since the alleged victim in this particular case, a Bureau of prison officer with some 25 years of experience, SBG only received one notice, one note, uh, that allegedly contained through threat. And therefore she could not have been, uh, received multiple communications under the Colorado stocking statute. And therefore the no evidence was in fact sufficient. First, um, the assimilative crimes act didn't confer jurisdiction in this particular case because we filed a motion to dismiss alleging no ACA compliance, that the statute was not, um, appropriate that was being filed under the ACA. And then ultimately in a reply brief, we invited the United States attorney to file the, uh, stocking statute under 18 USC 22 61. The government did not do so. In fact, they said, we are going to stick with the Colorado revised statute. They conceded the fact that they believed that the statute was in fact unconstitutional. The court had concerns about the statute being unconstitutional because of, uh, U. S. V. Alonus as related to the subjective intent. Uh, I'm sorry. I can hear the court. I can't hear. I'm sorry. I muted myself. So what? What's the timing of of all that when when you brought this up below on the jurisdictional question? We are. We originally filed a motion to dismiss and we said that the statute was inappropriate under the ACA. The people responded saying no, it's okay. It's basically a jurist. It's an attack under 12 B. The matter went forward. The court at the motions hearings acknowledged that it was a jurisdictional issue. We continue to persist that the wrong statute had been charged and altered under the ACA. Right? When did you? When did you file your motion to dismiss? Um, within the motion deadline, Your Honor. It was. It was. It was filed almost immediately pursuant to the motions deadline. We did file post trial motions for new trial, and then we, for lack of better term, supplemented further argument under the ACA. Are you? I'm sorry. Go ahead. Judge Phillips. Are you contending that your rule 12 motion was the same basis as your post trial motion on that point? In part, yes, Your Honor, because we did, in fact, raise questions as it relates to the ACA, and we believe this is the ACA is jurisdictional. I believe the 10th Circuit under Langford has found that it's, um, a jurisdictional issue. The Supreme Court under U. S. V. Williams found that it was a jurisdictional issue specifically as it related to, um, enlargement of the statute. Uh, in that particular case, they tried to statutory rape charge that basically expanded the penalties that wasn't available under the rate charge that the federal government had applied, and they simply wanted to expand the range when there was already an applicable federal statute. So I guess I guess you're saying that you don't care. It doesn't matter whether you raised it pre trial or post trial because it's jurisdictional in your opinion. Yes, Your Honor. That's correct. We believe that it could be raised at any time. Um, and we believe even if you look at, uh, Lewis U. S. V. Lewis, which is Supreme Court case in that particular case, it was more of a sentencing issue. Um, but it was really raised for the first time, and the Supreme Court said you have to go back and do a resentencing. That was the only relief that Lewis asked for. Uh, they didn't ask for dismissal like we're asking for in this, uh, particular case. Okay. And which one of our cases did you say held that, um, it would be jurisdictional? The Langford case, Your Honor. It's a 10th Circuit case from Oklahoma, and it was regarding a cock fighting statute being president of cock fighting statute. Um, the court dismissed that finding that there was no jurisdiction under the A. C. A. Because it was an expansion of, uh, crimes already existed when they could have used the federal statute as we, uh, argue in this particular case for Mr Twitty. All right. I'm sorry. I thought we had another question. I'm sorry. No, thanks. Um, so my question is, I think this is a hard issue. So my question is whether you really properly raised it below and on appeal. Well, you know, we think that we did, um, raise it properly. As I stated, I believe that this is a jurisdictional issue. I believe that it was raised efficiently in our motion to dismiss, citing, um, that basically the statute couldn't conform under the A. C. A. And then we also, in our reply early on, confirmed that argument where we said there's applicable federal statute here. This called, um, 18 U. S. C. 22 61 a which is the crime of stocking. And that was specifically, uh, there and it was amended so that it would include particular federal territory and or enclaves. It didn't require an interstate commerce nexus that it previously had the court. The Congress had actually changed that requirement. So therefore, we believe that it was, in fact, raised and and preserved for appellate issues. Your Honor. Okay. And even if our position is, Your Honor, that if the court says, Hey, there's sufficient jurisdiction that it did conform the A. C. A. That we have big issues here regarding the law that was presented to the court under the A. C. A. The court has to follow state law, and the state law as it relates to true threats is somewhat different than federal United States Supreme Court and 10th Circuit law, specifically under Alanis and Heineman. Um, Heineman 10th Circuit case stated that it's a subjective intent standard under the First Amendment. You have to be able to show that the defendant intended to cause the threat under Colorado law. The Colorado Supreme Court approved, and we cite to it in the matter of R. D. Which came out after this case was pending. Um, but we believe under Shea v Louisiana 4 70 U. S. 31 if you could receive retroactive constitutional rulings in your favor if you're on direct appeal, which we are in this particular case and in the matter of R. D. Which is actually consistent with people be Stanley, which was what we based our proposed jury instructions upon is that you have to have a subjective, um, standard as it relates to the listener. And we believe that that's not only consistent with black Virginia v Black, which was, um, obviously the Supreme Court case regarding true threats. And if you look at the, uh, case of people we R. D. The Colorado Supreme Court basically clarifies that, and they specifically reject the Heineman, um, analysis that it's basically just you have to show that the defendant intended to put fear into that person that you have to look at the totality of the circumstances specifically you have to look at what did the listener perceive it to be? You have to give it context. So we believe not if you look at Virginia v Black, but U. S. V. Watts, which was the case where the draft protester said, If I'm ever given a gun, I'll be pointing my sights at L. B. J. The court said that's obviously protected speech, and you have to listen to the context, particularly said to the roar of the crowd and the the Colorado Supreme Court, which is the law here basically says you have to consider what was the subjective intent. Okay, well, right there, um, with Judge Jackson putting in the Alanis requirement that it's not enough that an ordinary reasonable person in the defendant's shoes would have thought that it was a threat, but instead the defendant had to mean it as an intent that benefited you, didn't it? That's an extra burden on the government. So how can you complain about that? Well, you're in our position is, is that that it actually a large state law, which the A. C. A. Somewhat prohibits. Now, yes, it does say that, you know, under Alanis that you have to do that. But if you look at Colorado law, that's not what they said. They're saying you have to look at the totality of the circumstances. Does it benefit you? Does it benefit you or not? That particular, um, it benefited Mr Tweet in that regard, Your Honor. But as far as the second piece, and we're going to the reasonable person, the objective standard, Alanis doesn't talk about that because it's prosecution under 875 C. And there's nothing about the victim and how the victim perceived it and whether this particular victim has to feel threatened or a reasonable victim would feel threatened. Do you agree with that? Alanis just doesn't deal with that. I agree. I agree that Alanis does not the court specifically declined to address that issue. All right. And now with the Colorado statute, 18 3602, as far as what's a credible threat, what the statute says, credible threat means a threat that would cause a reasonable person to be in fear. And so how can you complain that it had to be this hearing officer who herself was in fear when the element of the statute is defined by the Colorado statute is that it's a reasonable person being in fear? Well, Your Honor, I think that the matter of R.D. says that under Colorado law, you have to consider that. And even before R.D., people V. Stanley said you have to consider what was the reaction. Reasonable person. Excuse me. I'm sorry to interrupt you, but I want to make sure I understand your point. Are you saying that R.D. and the other cases somehow overrule the statutory language, which says that the standard is cause a reasonable person to be in fear? Do those overwrite that statutory language? Your Honor, I believe that that the case law under the First Amendment that has been interpreted by the Colorado appellate courts in the Colorado Supreme Court does, in fact, change that language, just like a lot has changed the statutory language of the particular statute in question there. And here, yes, we believe that it is the subjective intent of the listener. And it does matter because the people argued in their closing that it doesn't matter what SBG thought about the case. The only thing she would say was, well, I was I had a little concern. She didn't say I was in fear. She didn't say I changed my patterns. If you look at, for example, Stanley, which was the case that preceded R.D. in that he did, he changed his basically lifestyle out of concern of these threats from Mr. Stanley. And in this particular case, we have a BOP correctional officer, some 25 years at the BOP, five at ADX. And of all of these supposed threats that never made it to her, she received one. She sat on the stand. She only received one threat. And her the most she could say under oath, under cross-examination was, I was concerned. That was it. She didn't say I was in fear. She didn't change anything about her lifestyle. And that's why Colorado law has to look at it. You have to look at the reasonable. You have to look at the totality of the circumstances and any of these threats that were going to be made of googling her, finding her, going off and killing police officers in Chicago and Atlanta. Completely unrealistic wasn't going to happen as Mr. Twinney was not even close to any sort of release date at that particular time. That's all I have. I have to reserve my 30 seconds or 23 seconds for rebuttal. Very well. Counsel, please proceed when you're ready. Good morning. May it please the court. I'm Carl Shock representing the United States. I'd like to start by emphasizing a critical point that this court made clear in United States versus Christie, which is cited in our brief. And that's that a charge under the ACA is a federal charge, not a state charge. And the assimilated offense is no less a part of federal law than any other federal offense defined by statute. So while state law provides the content of that law, the resulting offense, the federal offense, and it should be interpreted as one. Now, that point is critical here for at least two reasons. First of all, it establishes that the district court had jurisdiction over this case and therefore Twitty's arguments about the improper assimilation of state law, which were raised for the first time after trial. And I'll get to that in a moment are untimely and unreviewable. And second, it means that the district court was correct to follow federal law in interpreting and applying the charge statute. And under Heinemann, that meant requiring the jury to find subjective intent as a matter of if faced with the same constitutional challenge. So now I'll go to the assimilation issue first and why that issue is not jurisdictional. Here, Twitty was charged with a federal offense of violating the ACA. And therefore, like any other federal offense, the district court had jurisdiction over the case under 18 U.S.C. Section 3231. And like any other federal offense, the district court had jurisdiction over that offense, whether or not the indictment properly charged that offense, whether or not the act that was charged, in fact, met the legal definition of an offense. Those were issues that go to whether the indictment stated a claim, not to whether there was jurisdiction. Now, to respond to the point about Langford, which is only, I think, 10th Circuit case that opposing counsel mentioned, that is really an irrelevant case, as we're talking about here. That case dealt with and there's actually a footnote in that case that says, actually, this isn't even about subject matter jurisdiction. This is an issue of sovereign jurisdiction. And so there's a footnote that specifically addresses that. So that case is not on point. Four circuits have addressed this exact issue, the fifth, the fourth, the third, the ninth, including most recently the fifth in a published opinion, and have held that the erroneous assimilation of state law is not jurisdictional. And as the Fifth Circuit pointed out in key, that conclusion necessarily flows from the Supreme Court's opinion in Lewis, because in Lewis, the court held there was improper assimilation, said that the charge should have been under the federal crime, but didn't dismiss the case. Instead, it ultimately held it harmless and allowed the conviction to stand. That necessarily means there was jurisdiction over the case. Was the you in in in each of those cases, the other four circuits and the one you're referring to was the issue there specifically, whether, uh, this topic had been adequately covered by federal statutes and therefore assimilation should not have occurred, or were there other assimilation problems that were the subject of those cases? No, they were exactly the issue here. They were a claim that the federal statute already covered the conduct and he should have been charged under the federal statute. So exactly the same issue. Exactly the same legal issue that's presented here. Correct. Different statutes. But yes, the exact same legal analysis and and one other thing I'd like to point out along the same lines as Lewis, this court's opinion in Patmore, which granted it's a 50 year old case. But in that case, it was a similar thing dealing with assimilation. And this case is cited in my brief. That was a case about the federal assault statute and a state assault statute. And the court in that case did the same thing as in Lewis, which is this court said it was improperly assimilated, should have been charged under the federal assault statute. But again, it didn't dismiss the case. It remanded for resentencing under that federal statute. So all of these point out that this is not a jurisdictional issue. Now, I'd like to go to the point that Judge Carson started with, which was whether, um, this issue was raised. It was not. Um, the pretrial motion to dismiss was essentially his first argument on appeal. It was the argument that the Colorado statute was unconstitutional because it lacked subjective intent. You won't find anywhere in anything pretrial any reference to 22 61 a any reference to Section 1 15. Um, the closest that he comes is his point that he makes in his reply brief, where he says that if the government believed that Colorado, Colorado law conflicts with federal law, which, of course, we don't. But if the government believed that the government should charge him under the federal statute, but he didn't say that he couldn't be charged under the A. C. A. And, in fact, his whole motion to dismiss was premised on the idea that the A. C. A. And with it, this Colorado statute that he claimed was unconstitutional did apply. So the first time he ever said there was improper assimilation, the Lewis argument that he makes now was post trial and under Bowline and Rule 12 B three. That is a claim that had to be made before trial, or it's untimely and unreviewable unless there is good cause. He's made no argument that there was any good cause for failing to raise that earlier. So if we agree with you on that, what's left? Um, if you agree with me on that, then what's left is the constitutional question. I think I'm happy to answer questions on the jury instruction and the sufficiency claim. But to me, those are pretty easy issues, I would say. Um, and I could get to those if I had time. But on the constitutional question, um, this statute that the district court faced was just like the one that this court had in Heineman. And the reason I'm focusing on Heineman rather than aloneness is that aloneness was done as a statutory matter. And so I think that that could be one way the court could get to where it got. I think it's easier to decide it under Heineman as a constitutional matter, because then we don't have to deal with anything about what this statute means. Because even if we assume that this Colorado statute does not require subjective intent, as Mr Twitty argues, then we're in the exact same place as Heineman. Because in Heineman footnote to the court had a long footnote where it specifically addressed the question and held that that statute in that case did not require subjective intent. And in fact, its precedent foreclosed any argument that it did. And so that's exactly what Mr Twitty is saying. It required the jury to find subjective intent as a constitutional matter. And so the district court here was correct to take the same approach. By doing so, it wasn't changing Colorado law. It wasn't reading an element into Colorado law. What it was doing is it was construing the federal ACA crime of Colorado stocking on a federal territory. And that federal crime requires subjective intent as a matter of federal constitutional law in this circuit, whether or not the state crime requires intent as a statutory matter. The second point on that that I would like to make is to the extent the court does want to get to the statutory interpretation, which again, I don't think it needs to do. It is, it is statutory interpretation. In a way, I mean, it is saying that for federal purposes, the constitution requires intent. So when it's an assimilated crimes act, we're going to read that in. But we are not saying that that's what the statute would be interpreted in. But for the federal gloss, and therefore the state can do whatever it wants. I think that's right. I think that Heineman is a little bit unclear on that point, because it actually spends a lot of time saying the statute does not, you know, ordinarily, when you're constitutional saving construction, it's the statute could be read one could be read one of two ways, we're going to interpret it in a constitutional manner. Heineman is a bit different in that it clearly says the statute itself does not require subjective intent. And it nevertheless goes on to say, but if the jury finds subjective intent, the conviction can be upheld. So, so, but I, I get your point there. And I agree that that the ordinary way you would think of this is as a statutory interpretation. But the second point I want to make on the statutory interpretation issue is that saying makes clear in this case is cited in our briefs as well, that federal courts are not bound by state court interpretations of assimilated state statutes. So I have a lot in my brief about why I think Colorado law would do the same thing that was done here. The court doesn't need to get there. Because again, this is a federal statute saying says we are not bound by state court interpretations. Now, the first part of saying that is cited in Mr. 20s reply brief does say that state provisions regarding an element are followed. But I think that that if you look at what saying is saying, the first part of saying is saying you don't follow state procedural statutes. But of course, you follow state substantive statutes. But then the second part is saying, but in interpreting those state substantive statutes, the federal court is not bound by the state court interpretations, it interprets them. And it's in the first instance itself. And then finally, the point I'd like to make is that if we are looking at what a Colorado court would do here, it would do the same thing the court did here under the scenario here where subjective intent is required. And actually, the best indication we have of this is RD. RD says very little about this case, I think, because it makes clear that it's a state court interpretation of the First Amendment. It said it disclaims any reliance on state law at all. And so obviously, what it says about what the First Amendment requires is not binding on this court. But the one thing that is important that that RD does is that it makes a constitutional determination that there's an objective standard of a certain sort. And it then requires that objective standard for the conviction, even though significantly, the statute in that case has no objective standard at all. And so it essentially did exactly what the court did here, it found a constitutional requirement. And then it superimposed that requirement on the statute in order to support a conviction. And so if we got way down the line to what a Colorado court would if faced with the constitutional principle here, there's no question that a Colorado court would do that. RD didn't have to address subjective intent and specifically said that it was not addressing subjective intent at all. And of course, even if it did as a First Amendment principle, it would not be binded. Unless the court has any questions on those first two points, I would like to address the merits of the assimilation issue. And I recognize I may be walking into a hornet's nest here because I agree it's a tougher issue. And I think the better way for this court to resolve it is under Bowline and Rule 12. b3. But on the merits of the assimilation issue, I'd like to focus on the second prong of the Lewis analysis. And that's that even if Twitty could have been charged under either of these two federal statutes, neither statute indicates an intent to preclude the assimilation of this Colorado statute. And I think is that the test? Is it a is it a preemption or a subject matter preemption issue that we're addressing? It is the the ultimate question as phrased by the Supreme Court in Lewis is, is there an intent to the assimilation of the state statute? One of the things that the court can look to in answering that question is a kind of preemption type analysis, which is whether there is a detailed comprehensive statute that suggests an intent to cover all possible forms of stalking. Another part, and this is the part that I really want to focus on, is that Lewis says a factor that weighs in favor of assimilation is where the statutes target different forms of behavior. And that's what we have here. Even if the statute could have or even if the crime could have been charged under the federal stalking statute. That statute, which appears in a chapter of the U.S. Code focused on domestic violence, broadly covers any form of conduct that place a person in reasonable fear. The Colorado statute, on the other hand, targets a narrower and more specific type of conduct, which is repeated communications. That's something that the Lewis court said weighed in favor of assimilation. And I think importantly here, there is a subsection of 2261A that covers certain threatening communications, but that section doesn't apply here because Twiddy didn't use facilities of interstate commerce. So I think this is the exact kind of scenario where there's a gap for interstate communications like this one. Well, is there a gap that you've said that the but that the state statute requires, they're more precise about the kind of stalking, but the state statute seems to be a lesser included standard of the federal. And so I think that really advances your argument that the federal doesn't cover it. It covers it more broadly, but it does cover it. Yes, and that was the case with the statutes in Lewis as well, where there was a federal murder statute that covered all forms of murder. And then the statute in that case was a child abuse resulting in death. And the court found that this factor, the factor, the fact that the state statute was targeting a more specific type of conduct weighed in favor of assimilation. Now, there were other features of the murder statute not present here that ultimately made assimilation improper. But we don't have those here because neither of these statutes is the kind of detailed, comprehensive statute that suggests an intent to cover all possible forms of stalking. And so I would say you're saying that Lewis says that the fact that the state statute is a more specific target, even though it would be included in the broader language of a federal statute, is enough to prevent preemption and therefore assimilation is OK. I'm not saying it's enough. I'm saying it's a strong factor in favor of assimilation. And yeah, yeah, yeah. And so I'm I'm out of time here. So unless the court has any further questions, the government requests that the defendant's conviction be affirmed. Thank you, Mr. Reich. And we'll give you a minute since council went over as well. Thank you very much, Your Honor. We would note that Lewis specifically rejected the precise elements test. And if you look at Lewis, Williams, as well as the Roka case, in those particular cases, they all tried to assimilate a state statute. And the court found that there was a statute in the federal law books that was applicable and that for whatever reason, the state was either trying to lower their burden or increase the punishment. And the court found that that was completely unacceptable. And in this particular case, our position is that's really what they were trying to do. And by doing so, trying to mesh this third, basically creating a hybrid of state, federal and this hybrid of a mixed law, you're creating what Lewis said we specifically want to reject and avoid. You cannot do that. And even if the court were to change the instructions to adopt a lawness, we still think that the Colorado law applies. And Colorado says you have to have the subjective and reaction as it relates to the alleged victim of the alleged crime of the alleged hate speech, Your Honor. So therefore, we believe that one, there's no jurisdiction, but the court finds there's jurisdiction that in this particular case, there's structural air throughout as it relates to the law that was given to the jury. And therefore, if not dismissal, at least remand for retrial. Thank you. Thank you both for your arguments. The case is submitted.